The first case for oral argument today is Delaplane v. Marshall. Counsel. Thank you. Monica Knox for Mr. Delaplane. All the foundational issues in this case have been settled by a series of consistent holdings by this Court. McQuillan, Biggs, Sass, and Irons, and of course most recently Hayward. Hayward makes clear that nothing has changed from the time that McQuillan and Biggs first held that California life prisoners have a liberty interest, it's protected by due process, and among the due process protections is that evidence must support the finding. What Hayward does make more clear than the prior cases, though, is that the evidence must support a finding that the prisoner is a current risk to public safety. That is, that the evidence cannot simply support the finding for whatever reason the Board gives, like the crime is serious, but it actually has to support more than that. It has to support a finding that the prisoner's release would be a risk to public safety. Now, in the case of Hayward, there was an actual grant of parole made in that case. Is that correct? The Board had granted him parole and the Governor had reversed that grant. Does that make a difference? It doesn't make a difference to either the standard or the analytical approach because the Governor is bound by the same evidence, the same rules and regulations, and the same legal standing that the Board is. So although Hayward had gotten that initial finding by the Board, it was that very same finding that was under review by the Governor. So it is the same standard, same evidence, and so it doesn't make a difference in terms of the analytical approach here. But what about the liberty interest? If you've already been granted parole and then you lose it because the Governor takes it back, so to speak, does that change things at all? No, because actually the Board's grant under the current statutory and constitutional scheme for life parole in California, the Board's grant is somewhat akin to a recommendation because the Governor gets to review it and has the authority to reverse it. And so it's not really a final grant of parole until the Governor lets it stand, and then it would be different. Counsel, I have a question for you. The California statute specifically lists the seriousness of the original crime as one of the permissible grounds for denying parole. And my question to you is where the statute from the get-go says that, why would it be a denial of due process to rely on that statutory reason? That seems to be part of your argument, that it isn't enough to rely on the seriousness of the crime, even though the statute permits it explicitly. Well, that's not my argument, and I think I've been very clear in my briefing that I am not arguing that under no circumstances can the offense alone be enough to support a finding of unsuitability. What is absolutely clear from the statute is that the severity of the crime to the legislature is tied to timing. And so it may be that early on when someone comes up for parole, Mr. De La Plain came up for parole for the first time after serving six years because his statutory, his minimum eligible parole date was seven years, and he goes before the board a year before that. It may be at that point the severity of the crime was going to outweigh any changes that he had made. But it is related in the statute, and of course in logic, because we're talking about current risk, it is related to timing. And so there is a marked distinction between looking at a crime that was committed five, six, even ten years ago and what that means about the current risk that this prisoner poses and looking at a crime that was 20, 25, or 30 years ago. And that's one of the points that Hayward makes. What the Hayward court looked at is that they were looking at a crime that was 25 years ago. They were looking at criminal history of Mr. Hayward that was 25, 30 years ago. And they were looking at his serious substance abuse problem that Mr. Hayward had had that was also, he still did some of it when he got into prison, so it was also about 20 years ago. And what the Hayward court said is that's lost its ability to tell us much about this prisoner's risk to public safety because it was so long ago and there is so much that has happened in the intervening time. Now, I think it's conceivably possible that you have a case that it's been 30 years, but nothing has happened in the intervening time that would make you believe that the man has changed in any way. Well, one of the things that was relied upon was his insistence of not admitting to his responsibility for the crime. And that also is a current truth that he has not admitted his participation in his guilt. It is a current truth, but it's not true that the board relied on it. California law prevents the board from relying on it, and the board did not rely on it. And they relied also on prior crimes and on the DA's opposition. And as Hayward points out, the DA's opposition is relevant only to the extent that the DA gives some reason to believe he's the current risk. The DA's opposition in this case was based solely on the offense. And so it tells us nothing about Mr. De La Plain's current risk to public safety. His prior criminal history, yes, they did. They relied on the fact that it was escalating in that he had a period of about a year and a half where he was committing robberies, and then this murder grew out of those robberies and having been caught for those robberies. But that's also true in Hayward, is that Hayward had a much longer period of criminal history and a substance abuse problem also that they had relied on in the case. The issue, though, becomes in light of a quarter of a century of proven change by Mr. De La Plain, evidence of rehabilitation that not even the board disputes. They told him in issuing their decision that he had an exempt livery record and there wasn't a single thing different that they could tell him to do. And so the issue becomes in light of that quarter of a century evidence of change, what does his criminal history and his offense tell you about his current risk to public safety? And it tells, logically, it tells you nothing. Under Hayward, it tells you nothing. In Hayward, the court quoted from the district court opinion in Rosencrantz, and the quote from it is that after a quarter of a century, a crime tells you virtually nil about a prisoner's current risk to public safety. And so that's the issue here. If De La Plain had spent all his time in prison just getting by, maybe staying out of trouble, but not getting good psych reports, not getting ñ not improving his education, not improving his vocations, not staying up with his family and his friends to have stable relations and good parole plans, then I would say that the crime would still tell you a lot because you'd have nothing else to assess him by. But that is so clearly not the case before this Court. Do you ñ are you familiar with the Pedro case? Pedro case? Yes. Does that have any impact in this case? No, because in that case ñ I'm sorry. I am familiar with it, and I'm forgetting right now what it is. Let me reserve my time, and I'll answer it a little better. All right. Okay, fine. You may do so. Counsel for the government? Good morning, Your Honors. May it please the Court, I'm Deputy Attorney General Kim Ahrens, appearing on behalf of the respondent and appellee in this matter. I'd like to address the liberty interest first. Under Greenholtz, under the Greenholtz analysis, a liberty interest is created based on the state's statutory language, and the Court must look to the state statute to see if there's mandatory language which gives the prisoner some expectancy. Could you just speak up a little louder? I'm sorry. That's fine. The Court must look to the state statute and see if there is mandatory language  The Greenholtz Court also acknowledged that the state court decisions have some bearing on whether a state creates a liberty interest in parole. The Dannenberg decision by the California Supreme Court discussed the state's mandatory language. That decision didn't expressly resolve the issue of whether there's a liberty interest in California, but it did say that the language is not mandatory because it says shall followed by unless. Parole shall be granted unless, in the discretion of the decision maker, the inmate is not suitable for parole because he poses an unreasonable risk to public safety. Counsel, we also are bound by a number of decisions of this Court, including Hayward and a number of others. Under the standard set forth in our previous cases, what is the evidence that supports the finding that this prisoner poses a present risk to public safety? Well, I would start out by saying this Court is not bound by previous decisions of three judge panels. This Court acknowledged it in Duhame v. Ducharme. I'd like you to assume for the sake of my question that we are bound by all the prior decisions of this Court, including those by three judge panels. So what is the evidence with respect to this prisoner's current risk to public safety? Well, the current risk to public safety, that's a hard question for me to answer because the current risk to public safety comes from state law. It just simply doesn't come from United States Supreme Court law. Is there any evidence? I'm asking about evidence. Yes. What the record shows, and you're working hard not to answer that. The record shows that this particular inmate was convicted of first-degree murder. Unlike Mr. Hayward, who was convicted of second-degree murder, there was some provocation in Mr. Hayward's case. It was a heat of passion type of case. There was some evidence of premeditation and planning in this case because the victim had planned to testify against Mr. Delaplane, and the board found that the crime itself was egregious. In addition to that, multiple victims were involved. There was a series of robberies. Mr. Delaplane threatened a victim of one of those robberies at gunpoint, and then he followed through with the murder of the victim. He also had an escalating pattern of criminal conduct prior to the offense. And I would also state that Hayward was very clear that Hayward applied to the facts of that case, and this court stated that it was not creating a bright-line rule for future decisions. Hayward was largely based on this court's dicta in Biggs, and this court disavowed that dicta in Sass and in the unpublished decision in Kunkler and in Culverson. So I would submit that to the extent that the board can rely on the crime or unchanging factors, this court's precedent is presently unsettled on that issue. I'd be interested in your comments on where Greenholz fits into this scheme in terms of what our duty is, and the Pedro case. I'm sorry, Your Honor. I would have to request to submit additional briefing on the Pedro versus Oregon. What about Greenholz? Well, Greenholz is the only clearly established Supreme Court authority dealing with parole decisions. And in light of Ms. Laden and the more recent Landrigan decision, which this court has not addressed in any of its more recent decisions, the Supreme Court has been clear that where there's an open question in Supreme Court jurisprudence or where the Supreme Court has not addressed a specific issue, this court cannot find that the State court decision was contrary to controlling Supreme Court authority. Where the Supreme Court has spoken on the issue, the only relevant authority is that Supreme Court issue, and Greenholz is the only authority that addresses parole determinations. Greenholz expressly rejected the idea that some evidence is required in a parole decision. Greenholz, actually the Court of Appeals had required that an inmate receive a full written explanation of the facts relied upon by the board, and Greenholz reversed that requirement by the Court of Appeals. Greenholz said, and I quote on page 15 of the Greenholz decision, nothing in the parole process requires the parole authority to specify the particular evidence in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for release. If the particular evidence is not required, then how can the some evidence standard apply? It simply cannot. And the reason why the due process requirements are so minimal under Greenholz is because the liberty interest is minimal. And the state of California has afforded inmates greater process than federal due process requires, but that doesn't enlarge federal due process. Well, what was the inmate told here in this case? He was told that he was being denied parole because of the crime, because of the number of victims involved in the crime, and because of his criminal history. Okay. Nothing with respect to conduct in prison? No. They did review his conduct in prison, but the decision wasn't based on that. Well, now, what about Hayward? Well, the Hayward case I would submit is not controlling Supreme Court authority, and also a petition for rehearing and rehearing en banc is pending in the Hayward case, and so a formal mandate has not issued in that case. And, again, Hayward adopts California due process. It doesn't stay with the federal requirements of due process. The only way that this court should look to state law is to determine, number one, is there a liberty interest? What does the state say about a liberty interest? And then, secondly, does the state court decision, is it contrary to or an unreasonable application of controlling Supreme Court authority? If there's a liberty interest in this case, it's not a greater liberty interest than the Greenholts liberty interest. The Nebraska parole statute at issue in the Greenholts case is very similar to the California statute. It lists a set of factors that the board must look at to make a decision. The Supreme Court in Greenholts never said we're going to require an opportunity to be heard, a statement of reasons of how the inmate fell short, and that statement must comply with these criteria in the statute. The Supreme Court could have done that, and it never did. Just because California requires a compliance with the state regulations doesn't mean that federal due process requires it. Federal due process is a national standard that applies across national boundaries. I would also like to point out that under the California regulations, this unreasonable risk to public safety says, the regulations say the decision maker shall grant parole unless it finds that there's an unreasonable risk to public safety based on the following criteria, and then the statute lists the criteria. Provided the decision is based on the criteria, that unreasonable risk is inherent in the decision. There's no set of criteria that everyone would agree to that would satisfy that the inmate poses a current unreasonable risk. It's a subjective determination, and it's really a prediction. And so state law sets forth the criteria to satisfy that standard. Third, with regard to the remedy, to the extent that there is a due process violation, we would submit because the state interest is so high in comparison to the minimal liberty interest that the inmate has the proper remedy is further process for a due process violation, not release. And I would submit. Thank you, counsel. Thank you. Ms. Knox, you have some reserve time. On the issue of Pedro, Pedro was a review of a parole decision made under Oregon law. It does not appear from the opinion that the Oregon statute was a mandatory statute. But in any case, what this Court said in Pedro was the federal review of a parole decision is very limited. We don't dispute that. What is absolutely clear about federal review of a California parole decision, though, is that it has to include a review for evidence to support the ultimate finding, which in the case of California is that he's a current risk to public safety. The Attorney General is wrong about Ms. Lawden's change to this. This Court has already cited Ms. Lawden in Hayward and found that it didn't make a change. So the Attorney General is simply wrong about that. The Attorney General is also wrong about Greenholtz and whether evidence is required. This Court, of course, is bound by all the, as the Court has pointed out already, bound by McQuillan, Biggs, Sass, Irons and Hayward. But even if it weren't, the Attorney General's argument is simply wrong. Greenholtz required that there be a statement of reasons given. And if you look at what Greenholtz was talking about, it goes on to say that the reason for the statement of reasons is so the prisoner can challenge it, which makes no sense if evidence doesn't have to support the reason given. And the Supreme Court has also noted in many, many other cases about when there is a liberty interest involved, that evidence must support that. What this Court has said about it is that the government action depriving a person of a liberty right must have a rational, non-arbitrary connection to a legitimate purpose. The Supreme Court has said the same thing, where it discussed it that exact way. If there doesn't have to be evidence to support the only legal basis for holding a life prisoner in prison, then it doesn't have a legitimate connection to a non-rational person. For that reason, Mr. Delaplane is entitled to release. Thank you. Thank you very much, Counsel. The case just argued will be submitted for decision.
judges: Gibson , O'scannlain, Graber